761 So.2d 72 (2000)
STATE of Louisiana
v.
Darren J. SAM.
No. 99-KA-0300.
Court of Appeal of Louisiana, Fourth Circuit.
April 19, 2000.
*74 Harry F. Connick, District Attorney of Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney of Orleans Parish, New Orleans, LA, Attorneys for Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, River Ridge, LA, Attorney for Defendant/Appellant.
(Court composed of, Judge MOON LANDRIEU, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III).
*75 McKAY, Judge.

STATEMENT OF CASE
Darren J. Sam was charged by bill of information on May 22, 1995, with two counts of first degree robbery, violations of La. R.S. 14:64.1, and one count of armed robbery, a violation of La. R.S. 14:64. At his arraignment on May 31, 1995, he pleaded not guilty. The trial court found probable cause and denied the motions to suppress the identification, the evidence, and the statement as to counts two and three on July 14, 1995. The court found probable cause and denied the motion to suppress the identification as to count one on August 4, 1995. After trial on August 9, 1995, a twelve-member jury found him guilty of simple robbery as to count one, guilty as charged of armed robbery as to count two, and guilty of first degree robbery as charged as to count three. He was sentenced on September 8, 1995, to serve seven years at hard labor on the simple robbery conviction[1], thirty years without benefit of parole, probation, or suspension of sentence on the armed robbery conviction, and fifteen years without benefit of parole, probation, or suspension of sentence on the first degree robbery conviction.[2] The sentences are to run concurrently. This Court granted the defendant an out-of-time appeal on November 13, 1998.

STATEMENT OF FACT
At trial Officer Kermit C. Robertson testified that on March 18, 1995, about 4:00 a.m., he responded to a call about a robbery occurring at the Corner Pocket Bar at 940 St. Louis Street. Upon arrival, the officer met with five people Mr. Ira Sison, the bartender, Curtis Mangham, Yule Knighten, and two visitors from out of state. Mr. Sison told Officer Robertson that the defendant, Darren Sam, a man who frequented the bar, had just robbed him. He told the officer that the defendant had robbed him before. Mr. Sison stated that the defendant took three hundred and sixty six dollars from the bar. Mr. Sison told the officer that he first thought that the defendant had a gun, but he realized the defendant was not armed after the defendant jumped over the counter to the cash register.
Mr. Sison, the bartender at the Corner Pocket Bar, testified that his shift at the bar began at midnight on March 18th. When the defendant came into the bar about 4 a.m., there were seven or eight customers in the bar. The defendant immediately began cursing at Mr. Sison for trying "to send him to jail for life." Mr. Sison explained that the defendant "got off" on a robbery charge on March 14th-just four days before this robbery. The defendant demanded the money from the register, and, when Mr. Sison refused to hand it over, the defendant jumped over the counter and behind the bar. He took three hundred and sixty-six dollars from the cash register. Mr. Sison described the defendant as reaching in the front of his pants as though he had a gun. Mr. Sison did not see a gun on the defendant, but he thought the defendant might have a gun because he was pulling on the front of his pants, and that is where he had pulled a gun from the first time he robbed Mr. Sison. While the defendant was on the bartender's side of the counter, one of the customers threw a barstool at him; the stool hit the bartender who then used *76 it to beat the defendant. After the defendant was able to crawl back across the bar, one of the customers hit him with another bar stool and knocked him down. He fell, but he was able to get up and run from the bar. Some days after Mr. Sison had reported the matter to the police, he identified the defendant's picture from a photographic line-up. Mr. Sison admitted having two prior convictionsone for battery of a police officer and one for possession of marijuana.
Mr. Curtis Mangham testified that he got off work at 2:00 a.m. the morning of the incident and stopped in the bar to speak with his friend, Ira Sison. While in the bar, he saw a man come into the bar, jump over the counter, reach into the cash register, take out bills, and leave. Mr. Mangham said that he hit the man with a barstool as the man was trying to get from behind the bar. The man fell to the floor, but he still managed to flee the scene on a bicycle. Mr. Mangham admitted to having been convicted of theft in California in 1968.
Mr. Yule Knighten, a dining room supervisor at the Windsor Court Hotel, testified that he arrived at the Corner Pocket Bar about 3:00 a.m. on March 18th. Mr. Knighten's testimony corroborated the testimony given by Mr. Mangham; however, Mr. Knighten also recalled hearing the defendant say, "I did it before and I'll do it again, Bitch."
Mr. Lonzo Clay testified that he was working at Southern Parking at Tulane Avenue and South Villere Street on the evenings of March 22nd and 23rd taking tickets and payments from people who were parking. About 9:00 p.m. on March 22nd, a man walked up to the booth and pulled out a .9mm automatic weapon. He said, "Give it up or else I'm going to pop your ass." Mr. Clay gave the man about $300, all the money in the register. The man asked about the red bag, referring to the deposit bag used daily in the business, but Mr. Clay explained that the deposit had been made that day. After the robbery, Mr. Clay called the police. The next day about 6:00 p.m., Mr. Clay was at work in the parking booth when he noticed the man who robbed him walking toward him on the street; another man was with him. Mr. Clay called the police. Meanwhile, the robber walked up to the booth and asked Mr. Clay what he had told the police. When Mr. Clay answered that he had told nothing, the defendant said, "Don't make me have to hurt you." The defendant told Mr. Clay to open the register again, but Mr. Clay stalled, saying that he did not have a key. The defendant then noticed the red bag containing the day's receipts; he grabbed it and ran. Mr. Clay said he did not see a gun when he was robbed on March 23rd; however, he assumed the man was armed because he had seen the gun just the night before. As the robber ran from the booth, he met the police who were responding to Mr. Clay's earlier call. The police caught the man, and Mr. Clay identified the defendant, Darren Sam, as the man who robbed him twice.
Officer Ronald Gillard, Sr., testified that he responded to the armed robbery at 231 South Villere Street on March 22nd and interviewed Lonzo Clay about the incident. About 6:00 p.m. on the next day, the officer again responded to a call at that location. As he drove toward the parking lot, the officer saw a man carrying a red bag and running from the parking booth. Officer Gillard followed the man as far as North Robertson Street; there the officer caught up with him and ordered him to stop. The man looked at the officer and laughed. Officer Gillard exited his car and chased the man for about seventy-five feet before catching him. The red bag the man was carrying contained $500. When the defendant was arrested, he laughed and said, "I'll beat you in court."
Ms Krachelle Walls, who had lived with the defendant for five years and is the mother of his three children, testified that she spoke to Mr. Clay when she was in court for a motion hearing for the defendant. He told her that he was present for *77 a "supposed to be robbery." When Ms Walls asked what he meant, he answered, "If he [the defendant] would have [come] back with my money or either a quarter [seven grams of cocaine].... I wouldn't be coming to court on him today." On cross-examination, Ms Walls said she had never tried to get in touch with Mr. Clay, nor had she reported the incident to the district attorney.
Lonzo Clay was recalled by the defense and asked if he gave Ms Walls his telephone number after a hearing in court. He initially stated that she asked for his home telephone number, and he gave her a number. But in his later testimony, he admitted he gave her his telephone number at work. He said that Ms Walls had called him and also had sent someone to ask him not to testify.
Darren Sam, the twenty-one year old defendant, testified that he had prior convictions for attempted simple burglary, attempted unauthorized entry, theft of more than $500, simple escape, and battery of a police officer. The defendant said that on March 22nd, Lonzo Clay gave him $250 to obtain a "quarter" of cocaine for him [Mr. Clay]. The defendant told Mr. Clay that it would take ten minutes to get the cocaine. However, the defendant was delayed, and, when he tried to deliver the drug about an hour later, he noticed police cars in the parking lot. The next day when the defendant went to the parking lot to deliver the cocaine, he noticed a man named "Ricky" standing on the corner and spoke with him for a minute. Then Mr. Clay came out of the booth, and the two men walked a few feet away to talk. Mr. Clay asked what had happened on the previous day, and when the defendant said he did not come because he saw police cars, Mr. Clay said, "Man, you ain't come back with my stuff, I called the police and told them you robbed me." In anger the defendant picked up the red bag Mr. Clay had put on the hood of the car nearby. Mr. Clay went back to the parking booth, and, as the defendant walked to the corner, he put the red bag in his shirt. The defendant and a guy named Ricky were walking away when they saw a police car approaching. At that the defendant began running because he had the red bag. When asked if he made a statement to the police, the defendant said that when he was told that he was charged with armed robbery, first-degree robbery, and possession of stolen property, he said, "It ain't going to stand up in court."
As to the charge involving Mr. Sison, the defendant said that Mr. Sison had caused the defendant to be charged with armed robbery once before. The case went to trial, and he was found not guilty. According to the defendant, Mr. Sison's motivation was the same as Mr. Clay's, i.e., he was upset because the defendant did not bring Mr. Sison the cocaine he was supposed to bring him. The defendant stated that after the first trial, he went to the Corner Pocket Bar about 1:00 p.m., and Mr. Sison waved a Vodka bottle at him. The defendant grabbed the bottle, and the two began to fight. Then several patrons of the bar got involved in the fight, but the defendant Sam was able to get away from the building.

ERRORS PATENT
A review of the record reveals that the trial court sentenced the defendant immediately after denying his motion for new trial. The defendant did not waive his right to a twenty-four hour delay between the denial of his motion for new trial and sentencing. La.C.Cr.P. article 873. In State v. Augustine, 555 So.2d 1331 (La. 1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant's sentence if the defendant attacks his sentence, even if the defendant fails to specifically allege this failure as an error on appeal.
However, there are instances where the failure to observe the twenty-four hour delay is determined not to be reversible error although the sentence is challenged on appeal. In State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, certiorari denied by Seals v. Louisiana, 520 U.S. 1199, *78 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997), the Louisiana Supreme Court noted that the mandatory nature of the sentence distinguished the case from Augustine, supra, and found that the reversal of the sentence for failure to wait twenty-four hours between the denial of the motion and imposition of sentence was not warranted in the absence of prejudice. See also State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, writs denied, 95-2557 & 95-2475 (La.2/2/96), 666 So.2d 1087; State v. Diaz, 93-1309 (La.App. 3 Cir.4/6/94), 635 So.2d 499, writ denied, 94-1189 (La.9/16/94), 642 So.2d 191; State v. Williams, 97-970 (La.App. 5 Cir. 1/27/98), 708 So.2d 1086.
In State v. Bentley, 97-1552 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, writ denied, 98-3213 (La.5/7/99), 741 So.2d 27, this court held that any error in failing to observe the twenty-four hour delay in sentencing after the denial of a motion for new trial did not prejudice a defendant whose original sentence was vacated and he was then found to be a habitual offender. See also State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070.
In State v. Dickerson, 579 So.2d 472 (La.App. 3rd Cir.1991), writ granted in part, 584 So.2d 1140 (La.1991), the defendant challenged his sentence on appeal. The appellate court held that failure to observe the twenty-four hour delay was not reversible error where over a month passed between conviction and sentence, and a presentence investigation report had been ordered, so that there were no indications that the defendant's sentence was hurriedly imposed without due consideration, and the defendant did not argue or in any way show that he was actually prejudiced. See also State v. Robinson, 463 So.2d 50 (La.App. 5th Cir.1985).
In the present case the defendant was convicted on August 9, 1995, and was sentenced on September 8, 1995. There is no indication that the defendant's sentence was hurriedly imposed, and the defendant did not argue or in any way show that he was actually prejudiced by the failure to observe the twenty-four hour delay. There was a sufficient delay between the date of conviction and the date of sentencing to be harmless error where no prejudice is shown.

DISCUSSION

COUNSEL'S ASSIGNMENT OF ERROR NUMBER 1
In a single assignment of error, counsel for the defendant argues the evidence is insufficient to support the conviction for first degree robbery of Clay on March 23rd because there was no evidence to support an assumption that the defendant was armed during that incident.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable *79 doubt standard. State v. Jacobs, supra.
La. R.S. 14:64.1 defines first degree robbery as "the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." Mr. Clay stated that although he did not see a weapon on March 23 rd when the defendant was robbing him, he assumed there was one because the defendant had pointed a gun at him the night before.
The defendant contends that such an assumption is an inadequate basis for a conviction for first degree robbery. The Supreme Court addressed the issue of the amount of evidence necessary to support a victim's subjective belief that his assailant was armed. In State v. Fortune, 608 So.2d 148, 149 (La.1992), the Supreme Court stated:
Direct testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery.
In Fortune the Supreme Court reversed a conviction for first degree robbery and entered a conviction for simple robbery because the state failed to prove the defendant induced a subjective belief that he was armed with a dangerous weapon. The defendant in Fortune told the victim that he had a gun and demanded her jewelry, but the victim refused to comply. There was no testimony that the victim believed the defendant was armed, and the victim's friend thought the robbery was a joke.
The case at bar is clearly distinguishable from Fortune because Clay testified that he believed the defendant had a gun, and he had reason for that belief in that he saw the defendant with a gun during the course of the robbery on the previous night. Clay's testimony that the defendant threatened, "Don't make me have to hurt you," and then took $500 from him on March 23rdactions that occurred only one day after Sam had pointed a gun at him and taken $300 from himwas sufficient to prove, beyond a reasonable doubt, that the defendant was guilty of first degree robbery.
Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could easily have found the defendant guilty of first degree robbery beyond a reasonable doubt. Jackson v. Virginia, supra. See State v. Hill, 475 So.2d 1123 (La.App. 4th Cir.1985), writ denied, 478 So.2d 904 (La.1985). This assignment of error has no merit.

DEFENDANT'S PRO SE ASSIGNMENT OF ERROR NUMBER 1
In the first pro se assignment of error the defendant argues that the trial court erred by allowing the state to present character and other crimes evidence.
The defendant argues that the State improperly lulled defense counsel into eliciting information that the defendant previously attempted to rob the victim. Citing State v. Davis, 407 So.2d 702 (La.1981), the defendant argues that his conviction must be reversed because the only purpose for tricking his attorney into eliciting this information was to show that he was a person who committed criminal acts. However, there is nothing in the record to suggest that the State lulled defense counsel into eliciting information about the previous robbery. In fact, on direct examination, no mention of the previous robbery was made. The State merely asked Officer Robertson, the arresting officer, what the victim told him about the person who robbed him. In response to the question, the Officer stated, "He stated to me that he knew the person fromHe knew the person who attempted to rob him who had robbed him, and he knew his name. And his name was Darren Sam". The State made no attempt to elicit any information *80 concerning why or how the victim knew the defendant.
Rather, it was defense counsel who elicited that information while conducting his cross-examination of Officer Robertson. Defense counsel asked extensive questions concerning the victim and defendant's past relationship, and the reason for defense counsel's actions is readily apparent when one reviews the following colloquy that occurred between defense counsel and Officer Robertson:
BY MR. VALTEAU [defense counsel]:
Q. You said that Mr. Sison said he knew Mr. Sam?
A. Yes, he did.
Q. How did he say he knew him?
A. He said that he knew him from another incident. He said that he frequented the bar and had came (sic) in there and attempted to rob him once before.
Q. The incident he's referring to, he's referring to the armed robbery? That's where he knows him from?
Q. Yes, Mr. Sison also presented me with an instanter from a previous case that he said that he was involved with Mr. Sam.
Q. So he told you that he was involved in a previous case with Mr. Sam?
A. Yes.
Q. Did he tell you the disposition of that case?
A. Yes, he did.
BY MR. ENRIGHT [prosecutor]:
Judge, at this time I'm going to object to hearsay.
Q. Okay, do you know the disposition of that case?
A. Yes, I do.
Q. What was it?
A. He said that he was found not guilty.
Q. Not guilty on armed robbery?
A. That much I don't know. He just said that he wasn't guilty.
Q. You said he gave you an instanter subpoena?
A. Yes, sir, he gave that to me as a better way to identify the person that robbed him.
Q. Okay. Do you remember theWell the date of the incident was March 18, correct?
A. Yes, sir.
Q. Do you remember the date of the instanter subpoena?
A. I believe it was the 14th of March. Q. And when instanter subpoenas are Well, are you familiar with what a(sic) instanter subpoena is?
A. Well, that's generally when they want to get you in court real fast.
Q. Like for trial or something?
A. For trial.
Q. So this was apparently for a court date that he had, right?
A. Yes.
Q. And do you know if this was for the armed robbery in question?
A. It's not the one we're talking about now.
Q. But the one previous?
A. A previous robbery.
Q. So he had just went to court on him four days before?
A. Yes.
Q. And you said you knew the disposition of that case, that Mr. Sam was found not guilty in that case?
A. Yes.
In addition to the above testimony concerning the allegations of a prior robbery, the defendant also testified concerning the alleged prior robbery. He told the jury that Mr. Sison was simply upset because he failed to deliver some promised illegal drugs. The defendant's testimony and the above-cited colloquy with Officer Robertson suggest that the eliciting of information about the prior armed robbery was a *81 major part of the defense's trial strategy. The apparent purpose of this deliberate questioning about the previous robbery was to show that the victim had accused the defendant of robbing him on a prior occasion, but the victim was exonerated.
The testimony given by Officer Robertson on direct examination was necessary and relevant to show that the victim was able to properly identify the victim because he already knew him. Since all the parties acknowledged that the victim and the defendant already knew each other, defense counsel had no reason to question the officer about the previous allegation of robbery for purposes of challenging the identification. However, defense counsel had ample reason to bring out the fact that the victim may have had reasons for falsely accusing the defendant. His questions about the previous robbery were clearly aimed at presenting that issue to the jury. The argument that the State improperly lulled defense counsel into eliciting character evidence or information concerning a previous crime committed by the defendant has no merit.

DEFENDANT'S PRO SE ASSIGNMENT OF ERROR NUMBER 2
In the second pro se assignment of error the defendant argues that he was denied a fair trial when the trial court allowed the joinder of the armed robbery and two counts of first-degree robbery.
The defendant argues that because the armed robbery and first-degree robbery charges involving Alonzo Clay arose from different acts, those charges could have been severed and tried separately from the first-degree robbery charge of Mr. Sison. He argues that as a result of being tried on all three counts, he was prejudiced. The evidence, according to the defendant, implied that he possessed a specific criminal disposition, thus rendering the jury hostile toward him. He argues the evidence in the cases was not kept separated, thus the jury was overwhelmed by the evidence and could not segregate the offenses. Further, he argues the jury was influenced by the overwhelming amount of irrelevant and prejudicial evidence, and this resulted in convictions on all counts.
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial." La. C.Cr.P. article 493. "If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires." La.C.Cr.P. article 495.1.
Whether a motion to sever should be granted rests within the sound discretion of the trial court whose decision will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Davis, 596 So.2d 358 (La.App. 4th Cir.1992), writ denied, 604 So.2d 965 (La. 1992). In the instant case, there is no indication that the defendant filed a motion to sever offenses as he could have done under La.C.Cr.P. art. 495.1. However, assuming the court felt there was a danger of prejudice to the defendant, it could have ordered separate trials. Generally, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime." State v. Lewis, 557 So.2d 980, 984 (La.App. 4th Cir.1990), writ denied, 578 So.2d 922 (La.1991).
In the case at bar, the defendant was charged and tried on one count of armed robbery and two counts of first degree robbery. These offenses are similar in nature and triable by the same mode of trial. See La.C.Cr.P. article 782. Further, *82 the offenses occurred within a five-day period. The facts of each offense were not confusing and could be easily distinguished by the jury. The victims were able to present separate and concise testimony concerning the robberies, and there is no evidence that the jury was confused. The police officers who testified also distinguished each offense. As the facts of each offense were not confusing or complex, there was little likelihood that the jury would have been confused by the state's presenting evidence of the two crimes together. The trial court did not abuse its discretion by trying all offenses together, particularly since no motion to sever offenses was filed.
This assignment is without merit.

DEFENDANT'S PRO SE ASSIGNMENT OF ERROR NUMBER 3
In the third pro se assignment of error the defendant argues that the trial court erred in denying his motion for continuance and motion of post-verdict judgment of acquittal.
Notwithstanding a request for a continuance to allow the defendant to prepare a motion for new trial and/or post-verdict judgment of acquittal, the court denied the motions and sentenced the defendant the same day. In doing so, the defendant argues the court violated La.C.Cr.P. art. 873. Additionally because La.C.Cr.P. art. 853 requires that a motion for new trial must be in writing, the defendant argues the court erred by denying his oral motion. For these reasons he argues his sentence must be vacated and the case remanded for resentencing with instructions that he be given the opportunity to file his motions for new trial and post-verdict judgment of acquittal.
La.C.Cr.P. art. 707 provides that motions for continuance shall be in writing, allege specifically the grounds upon which based, and, when made by the defendant, be verified by affidavit. Likewise, La.C.Cr.P. art. 852 requires that a motion for new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney. The defendant's motion to continue was made orally on the day set for sentencing, and he did not file a written motion. The Louisiana Supreme Court has recognized that an exception to the requirement that motions to continue be in writing exists where the circumstances that allegedly made the continuance necessary arose unexpectedly so that defense counsel did not have an opportunity to prepare a written motion. State v. Parsley, 369 So.2d 1292, 1294, fn. 1 (La.1979). The sole basis given for wanting a continuance was that the verdict sheets indicated the jury may have been confused about the charges. The circumstances herein were such that defense counsel should have been able to prepare a timely written motion for continuance as counsel viewed the jury verdict sheets immediately after the verdicts were rendered. The facts of this case do not warrant the extension of the Parsley exception. Moreover, whether a motion for continuance should be granted or denied rests within the sound discretion of the trial court. State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995). A ruling will not be disturbed on appeal absent a clear showing of abuse of discretion, and a showing of specific prejudice caused by that denial. State v. Benoit, 440 So.2d 129 (La.1983). When a motion to continue is based upon a claim of inadequate time to prepare a defense, the specific prejudice requirement has been disregarded only when the time has been "so minimal as to call into question the basic fairness of the proceeding." State v. Jones, 395 So.2d 751 (La.1981). The reasonableness of discretion issue turns upon the circumstances of the particular case. State v. Simpson, 403 So.2d 1214 (La.1981).
In the instant case counsel argued that a continuance was necessary because he needed additional time to prepare a motion *83 for a new trial and a motion for post judgment acquittal because the jury verdict sheets indicated that the jury may have been confused.
A review of the record indicates that defense counsel should have been aware of the jury verdict sheets immediately after the verdict was rendered. Moreover, at the sentencing hearing, the trial court noted that there was nothing in the jury verdict sheets to indicate the jury was confused. Further, as the evidence was sufficient to support the verdicts, the defendant had no basis for requesting a new trial or a judgment of post verdict acquittal. Thus, he was not prejudiced by the denial of his motion for a continuance. Absent a clear showing of abuse of discretion and a showing of specific prejudice because of a denial of a continuance, the trial court did not abuse its discretion in denying the defendant's oral motion to continue. State v. East, 97-2862 (La.App. 4 Cir. 10/27/99), 745 So.2d 812.

DEFENDANT'S PRO SE ASSIGNMENT OF ERROR NUMBER 4
In the final pro se assignment of error the defendant argues that his sentence is excessive.
The defendant argues that the sentencing transcript of September 8, 1995 fails to reflect that the trial judge considered the sentencing guidelines as required by La. C.Cr.P. art. 894.1. Accordingly, he argues that his sentence is excessive because it far exceeds the one allocated by the sentencing guidelines.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739, (La.1992). The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). La.C.Cr.P. art. 894.1 sets forth sentencing guidelines to be followed so that the trial judge can tailor the sentence to the particular defendant and his particular crime; but, it is not necessary that the judge recite all of the factors in Article 894.1 as long as there is evidence in the record that the judge considered the factors and tailored the sentence to fit the defendant and his crime. State v. Welch, 550 So.2d 265 (La.App. 4 Cir.1989), writ denied by State ex rel. Welch v. State, 94-0437 (La.6/21/96), 675 So.2d 1071.
In the present case the defendant fails to specify any mitigating circumstance that the trial court neglected to consider. At the sentencing hearing, the trial court specifically inquired concerning the defendant's age and education and learned that he was twenty-one years old and had completed tenth grade. Moreover, the record shows that when asked if the defendant or his counsel had anything to say in mitigation of the sentence, defense counsel responded, "Nothing, Your Honor." Sent.
The trial court was thoroughly familiar with the defendant's criminal record as the defendant testified concerning his convictions at trial. He admitted having pled guilty to attempted simple burglary, attempted unauthorized entry, theft, simple escape, and battery on a police officer. At the sentencing hearing, the prosecutor informed the court that the defendant's convictions dated back to 1989 when he was convicted of attempt unauthorized entry into a dwelling. In 1990, he was convicted of battery on a police officer, and in 1992, he was convicted of theft over five hundred dollars. In 1993, he was convicted of simple escape.
The sentencing range for simple robbery is zero to seven years with or without hard labor and or a fine of not more than three thousand dollars. The defendant, an admitted prior offender, received a sentence of seven years for the simple robbery conviction. *84 The sentencing range for the first degree robbery conviction was three to forty years at hard labor without benefit of parole, probation, or suspension of imposition or execution of sentence. The defendant received a sentence of fifteen years at hard labor without benefit of parole, probation, or suspension of imposition or execution of sentence for this conviction. The sentencing range for the armed robbery conviction was ten years to ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant received a sentence of thirty years at hard labor without benefit of parole, probation, or suspension of sentence.
The defendant has not proved and the record does not show that under the facts of this case that the trial court abused its sentencing discretion in sentencing the defendant to the aforementioned concurrent sentences. This assignment of error is without merit.
Accordingly the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Both the minute entry and the docket master state that the defendant was sentenced to seventy years for simple robbery. However, the sentencing transcript indicates that the sentence was seven years. (Sentencing transcript, p. 7). Where there is a conflict between the transcript and the minute entry, the transcript controls. State v. Jones, 557 So.2d 352 (La.App. 4 Cir.1990).
[2] The State filed a multiple bill, and on June 27, 1996, the defendant was found to be a multiple offender and sentenced to serve sixty-seven years on each count. On August 18, 1997, the multiple offender adjudication was set aside. Because the sentences of September 8, 1995 had not been vacated prior to the imposition of the multiple offender sentences, the original sentences remain in effect.