L LOVE, Judge.
On December 14, 1998, the State filed a bill of information charging the defendant, Stanley Coston, with two counts of armed robbery (counts one and four), with burglary of an inhabited dwelling (count two), and with two counts of first degree robbery (counts three and five). The defendant was arraigned and pled not guilty on December 16, 1998. On January 11, 2000, the court severed the burglary count. On January 12, 2000, the jury found the defendant guilty on four counts of first degree robbery.
On February 7, 2000, the State filed a multiple bill of information charging the defendant as a third felony offender. On March 10, 2000, the court sentenced the defendant to a total of four years for all of the counts, without benefit of parole, probation or suspension of sentence, with sentences to run concurrently. On March 20, 2000, following a hearing on the multiple bill, the court adjudicated the defendant a second felony offender. The trial court set aside the sentences on counts three and four, and re-sentenced the defendant on both of these counts pursuant to La. R.S. 15:529.1 to forty years, without benefit of parole, probation or suspension of sentence, with credit for time served and with sentences to run concurrently and concurrent with any other sentence.
| .¿following the multiple bill hearing, the defendant withdrew his not guilty plea to burglary and entered an Alford[1] plea. The trial court sentenced the defendant to one year on the burglary count, without benefit of parole, probation or suspension of sentence, with credit for time served and with sentence to run concurrently with any other sentence.

*911
FACTS

The defendant was charged with crimes arising from five separate incidents. The first incident occurred at 8:15, a.m. on October 3, 1998, as Karla Zelaya[2] exited her apartment in the 3700 block of Camp Street. A man riding a red bicycle approached her, exposed a gun tucked in his waistband, and demanded her purse and keys. After the assailant rode away with her purse, she went to a neighbor’s house, and called the police.
Officer Edgar Steahle responded to Ms. Zelaya’s call. He questioned the distraught victim, who provided a full physical description of the perpetrator and his clothing. Officer Steahle searched the neighboring area but did not locate the suspect. Detective Sal Caronna investigated the Zelaya robbery, and developed the defendant as a suspect. On October 13, 1998, he presented a photographic lineup to Ms. Zelaya; she positively identified the defendant as her assailant.
The second incident occurred on October 9, 1998 when the defendant allegedly burglarized the home of Casey Valadie at 3622 Constance Street.
The third incident occurred on October 9, 1998, at 8:30 a.m. when Kathleen Costello was backing her car out of her driveway in the 1000 block of Peniston Street and she heard a loud bang on the rear of her vehicle. Ms. Costello looked 13back to investigate the noise, and she saw a man leaning over, as if she had hit him with her vehicle. She offered the man assistance, and asked him his name and address, but the man demanded money and the car keys. When she refused, the man shoved Ms. Costello into the car. Ms. Costello sounded the horn, and the assailant raised his T-shirt as if reaching for a weapon. Refusing to give the man her car keys, Ms. Costello surrendered about one hundred dollars, and the assailant walked away.
On the morning of the robbery, Ms. Costello reported the incident to the police. Detective Gerard Kuhn showed Ms. Costello a photographic lineup, but she did not identify her assailant in any of the photographs. On October 13, 1998, Detective Kuhn, along with Detective Lisa Phillips, displayed a second photographic lineup to Ms. Costello, and she immediately identified the defendant as the robber.
The fourth incident occurred on October 11, 1998, as Michael Triay secured his son in his ear, which was parked on Audubon Street. A man on a bicycle stopped next to the Triay vehicle and indicated that he was armed. The man ordered Mr. Triay to surrender his money or be shot. After Mr. Triay gave the robber his money, the robber rode away on his bicycle. Mr. Triay reported the incident to the police, giving a physical and clothing description, which included plaid underwear worn by the suspect. Detective Louis Labat investigated the Triay armed robbery and developed the defendant as a suspect. On October 15, 1998, Mr. Triay identified the defendant as the armed robber from a photographic lineup compiled by Officer Labat.
|4The fifth incident occurred on October 11, 1998, at 11:45 p.m. when Officer Brian Warner responded to a robbery call in the 4800 block of Baronne Street. The victim, Nicole Farkouh, described her assailant and told Officer Warner that the suspect entered her home and demanded money. She gave the suspect twenty-three dollars. The suspect told Ms. Farkouh to accompany him upstairs but she refused. The assailant then indicated that he had a gun in his pants pocket. When Ms. Farkouh asked to see the weapon, the suspect fled. *912 Ms. Farkouh subsequently identified the defendant from a photographic lineup as the man who robbed her.
At 4:30 a.m. on October 13, 1998, Officer Vernell Brown and his partner observed the defendant walking near the intersection of Chestnut and Upperline Streets, pushing a red bicycle. Officer Brown noticed that the defendant fit the description of a suspect sought in connection with a rash of uptown robberies. Officer Brown stopped the defendant, verified his identity, and arrested him on suspicion of armed robbery.
After the defendant was arrested and read his rights, he gave a statement to Detective Kuhn, admitting that he robbed Ms. Costello and confessing to a burglary of an uptown dwelling. Detectives Lisa Phillips and Walter Gifford executed a search warrant on the defendant’s home during which they seized several items of clothing, including a pair of plaid underwear. One victim, Mr. Triay, identified the plaid underwear among the clothing seized from the defendant’s home.

DISCUSSION

ERRORS PATENT

A review of the record reveals none.

\ .STATE’S ASSIGNMENT OF ERROR NUMBER 1

In its sole assignment of error, the State argues that the trial court erred in adjudicating the defendant a second felony offender, rather than a third felony offender, as charged in the multiple bill of information.
Louisiana’s Habitual Offender Law charges the district attorney with the burden of proving beyond a reasonable doubt any issue of fact, and the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. La.Rev.Stat. ANN. § 15:529(D)(l)(b). The State must establish the prior felony and that the defendant was the same person convicted of that felony. State v. Neville, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-39. To prove that the defendant is the same person convicted of the prior felony, the State may introduce witness testimony, expert opinion regarding the fingerprints of the defendant when compared with those in prior records, or photographs in the duly authenticated record. State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 326.
If a prior conviction resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights, and that he knowingly waived those rights prior to the guilty plea. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (holding that a court must advise a defendant of his privilege against self-incrimination, his right to a jury trial, and his right to confront his accusers before he pleads guilty); see also State v. Shelton, 621 So.2d 769, 771 (La.1993). If the defendant denies the allegations of the bill of information, the State has the burden of proving the existence of the prior guilty pleas and that the defendant was represented by counsel. Shelton, 621 So.2d at 779. Once the State meets this burden, the defendant must produce some ^affirmative evidence of an infringement of his rights or of a procedural irregularity. Thereafter, the State must prove the constitutionality of the plea. Id.
In proving the constitutionality of the plea, the State must produce either a “perfect” transcript of the Boykin colloquy between the defendant and the trial judge. Id. at 780. If the State introduces a guilty plea form, a minute entry, or an “imperfect” transcript, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the *913 State met its burden of proving that defendant’s prior guilty plea was informed and voluntary. Id.
At the multiple bill hearing in this case, the State presented the testimony of Officer Terry Bunch who testified that defendant’s fingerprints, taken on the morning of the multiple bill hearing, matched those on arrest register No. 01056964. The officer then examined a, packet of documents, which included a bill of information, a signed waiver of constitutional rights, copy of a docket master and minute entry pertaining to the defendant’s 1987 plea of guilty to purse snatching. Officer Bunch linked the arrest register to the documents through name, date of birth, social security number and BFI number. Officer Bunch repeated the process with documents pertaining to the defendant’s 1994 plea of guilty to unauthorized entry of an inhabited dwelling, linking these documents by name, date of birth, social security and BFI numbers. The defendant argued that the docket master and the minute entry for his 1987 plea lacked proof of Boykinization, but the defendant acknowledged that the 1994 documents contained no procedural irregularities.
With regard to the 1987 plea, the State introduced the waiver of rights/guilty plea form, docket master and minute entry memorializing the defendant’s plea to purse snatching. The guilty plea form is initialed and signed in the appropriate [7manner by the defendant, defense counsel and the judge. Moreover, the form enumerates the defendant’s Boykin rights, followed by the defendant’s initials signifying his waiver of those rights. The docket master and minute entry verify that the defendant was represented by counsel, understood his rights and voluntarily pled guilty to the predicate conviction.
The State met its initial Shelton burden through production of the guilty plea form, which properly sets out the defendant’s Boykin rights. The form was initialed by the defendant and signed by counsel. The State also produced a minute entry establishing that the defendant was indeed represented by counsel:
The Court interrogated the defendant regarding his competency, and found him knowledgeable of his rights and that the plea was freely and voluntarily made with a basis in fact. The defendant was satisfied with [h]is advise (sic) from counsel.
Although the minute entry did not set out all of the Boykin rights, it proved that counsel was present when the defendant signed and initialed the guilty plea form, which did set out all of the rights. See State v. Mayo, 99-2828 (La.App. 4 Cir. 9/27/00), 770 So.2d 462, 465. The trial court erred in finding the evidence insufficient to find the defendant a third offender.
The State’s introduction of proof shifted the burden to the defendant to affirmatively prove that his rights were infringed or that there was a procedural irregularity. The defendant claimed that the State’s documentation of his purse snatching conviction lacked proof that he was properly advised of his privilege against self-incrimination, his right to a jury trial, and his right to confront his accusers before pleading guilty, as dictated by Boykin, supra. This allegation does not satisfy the defendant’s burden of affirmatively proving procedural irregularity or infringement of his rights. Even if the defendant has satisfied his burden, the | RState has proven the constitutionality of the defendant’s plea by introducing the guilty plea form and the minute entry, which show that defendant’s plea was informed and voluntary.
*914 The trial court erred in finding the defendant a second felony offender. The State presented sufficient evidence to the find the defendant a third felony offender. Therefore, we vacate the multiple bill sentences on counts three and four and remand to the trial court for further sentencing proceedings consistent with this holding.

DEFENDANT ASSIGNMENT OF ERROR NUMBER 1

In one assignment of error, the defendant contends that the trial court erred in joining the offenses for trial. He argues that the offenses charged were dissimilar because they resulted from five separate incidents, which occurred at different times. Therefore, the trial court’s misjoin-der of the offenses prejudiced his right to a fair trial.
Article 493 of the Louisiana Code of Criminal Procedure provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
Article 495.1 of the Louisiana Code of Criminal Procedure discusses the severance of joined offenses and provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
19Whether a motion to sever should be granted rests within the sound discretion of the trial court whose decision will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Johnson, 96-0950 (La.App. 4 Cir.1997), 706 So.2d 468, 476.
In this case, no motion to sever was filed. Nevertheless, if the court felt the defendant would have suffered prejudice from the joinder, it could have ordered separate trials. “Generally, there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime.” State v. Lewis, 557 So.2d 980, 984 (La.App. 4 Cir.1990). The defendant has a heavy burden of proof when alleging prejudicial joinder of offenses, and he must make a clear showing of prejudice. State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1015.
In determining whether joinder of two or more offenses would result in prejudice, a court should consider: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. Id.
The defendant has failed to clearly show prejudice in this case. The defendant was charged and tried on two counts of armed robbery and two counts of first degree robbery. The offenses are similar in nature and triable by the same mode of trial. See La.Code Crim. Proc. Ann. art. 782; La.Rev.Stat. Ann. §§ 14:64,:64.1. The *915 offenses occurred in the same general location, within days or linhours of one another. The facts of each offense were simple and uncomplicated. The victims each identified the defendant through photographic lineup, and testified clearly as to the facts of each incident. The investigating officers documented and distinguished each offense. The defendant offered no evidence that the state’s presentation of all the crimes together confused the jury or hindered the defendant’s right to present a defense. Further, the defendant presented no evidence to suggest that the State joined the offenses to show the defendant’s criminal propensity, and there is no evidence of jury hostility as a result of the joinder. The trial court did not abuse its discretion by trying all offenses together, particularly since no motion to sever offenses was filed. State v. Sam, 99-0300 (La.App. 4 Cir. 4/19/00), 761 So.2d 72, 82.

DEFENDANT ASSIGNMENT OF ERROR NUMBER 2

The defendant next argues that the trial court erred in denying his motion to suppress the identifications as unduly suggestive and unreliable.
This court stated the law pertaining to out-of-court photographic identifications in State v. Sterling, 96-1390, pp. 3-4 (La.App. 4 Cir. 11/13/96), 684 So.2d 74, 75-76:
The defendant bears the burden of proving that an out-of-court identification itself is suggestive, and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lee, 94-2584 (La.App. 4 Cir. 1/19/96), 668 So.2d 420, writ denied 96-0477 (La.5/10/96), 672 So.2d 919. An identification procedure is unduly suggestive if it focuses attention on the defendant. State v. Davis, 27,961 (La.App. 2 Cir. 4/8/96), 672 So.2d 428. Even a suggestive out-of-court identification will be admissible if it is found reliable under the totality of circumstances. State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102.
If the photographic identification is found to be suggestive, it must be determined whether, under all the circumstances, the suggestive procedure gave | nrise to the substantial likelihood of irreparable misidentification. It is the likelihood of the misidentification that violates due process, not merely the suggestive identification procedure. State v. Laymon, 97-1520 (La.App. 4 Cir. 3/15/00), 756 So.2d 1160, 1172.
The United States Supreme Court set forth a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Cockerham, 95-0172 (La.App. 4 Cir. 3/14/96), 671 So.2d 967, 972.
As to the first two factors, Ms. Zelaya, Ms. Costello and Mr. Triay were robbed during daylight hours, and Ms. Farkouh was accosted in her well lit home. The defendant engaged each of the three female victims in conversation, so their attention was focused on their assailants. The third factor, accuracy of the witnesses’ prior description, was borne out at trial as to the defendant’s age, height, weight and hairstyle. The clothing descriptions matched the items seized at the defendant’s home. Fourth, the victims were certain of their identifications. Finally, the time between the offenses and the identifications was nine days for Ms. Zela- *916 ya, four days for Mr. Triay, two days for Ms. Farkouh and hours for Ms. Costello. The in-court identifications were made in June 1999 at the motions hearing and at trial in January 2000 — approximately eight months and fourteen months, respectively, after the robberies.
haThe defendant contends that his photograph, in the lineups shown to the three female victims, improperly focused attention on him because his head is depicted noticeably larger than the heads in the other photographs and the background in his photograph is lighter than the backgrounds in the other pictures.
Ms. Zelaya agreed that the defendant’s head appeared larger than the other suspects and acknowledged the light background, but testified that those observations did not influence her identification. She remembered the defendant by his “bulging eyes” and “pointed ears.” Likewise, Ms. Farkouh testified as to the defendant’s appearance in, and the quality of, the photograph. However, she noted that in spite of the lighter or over exposed background, which made the defendant’s skin tone appear lighter than it actually was, she remembered the eyes as the defendant’s “clearest physical feature.” On the other hand, Ms. Costello testified she did not notice any differences in the defendant’s photograph, but recognized the defendant’s face “immediately.” Analyzing the reliability of the in-court and photographic lineup identifications, under the totality of the circumstances, the identifications were reliable. This assignment is without merit.

DEFENDANT ASSIGNMENT OF ERROR NUMBER 3

In his third assignment of error, defendant complains that the trial court erred in not granting a mistrial due to prosecutorial misconduct, namely the State’s eliciting testimony related to an inadmissible portion of his statement.
“Mistrial is a drastic remedy, and is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial.” State v. Dank, 99-0390 (La.App. 4 Cir. 5/24/00), 764 So.2d 148, 158 (quoting State v. Wessinger, 98-1234 (La.5/28/99), 736 So.2d 162, 183). “The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, 113lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion.” Id.
Prior to trial, out of the presence of the jury, the trial judge ruled that the State could not reference portions of the defendant’s confession pertaining to crimes with which he had not been charged. During Detective Kuhn’s testimony, the State had him read from the defendant’s statement:
By The Prosecutor:
Q. Question: “I would like to ask you about a robbery that occurred on Sunday, October 11, 1998, at approximately 4 a.m.” I’m sorry. I misread that. This should be at 4 p.m., I believe. (emphasis supplied)
[[Image here]]
Q. Can I strike that, Your Honor?
By The Judge:
Please.
The defendant claims that the prosecutor’s misstatement prejudiced him by giving the jury the mistaken impression he had confessed to the robbery of Michael Triay.
Pursuant to La.C.Cr.P. art. 775, a mistrial shall be ordered, and in a jury case the jury dismissed, upon motion of the defendant, when prejudicial conduct in or outside the courtroom makes it impossi *917 ble for the defendant to obtain a fair trial, or when &■ prejudicial remark is made within the hearing of the jury. In this case, the defendant neither objected to the prosecutor’s remark nor requested an admonition or mistrial, hence, the issue is not preserved for appeal. La.Code Cbim. PROC. Ann. arts. 770, 771. Even if the issue was preserved for appeal, there is no evidence the jury was adversely impacted by the prosecutor’s misstatement. As |14soon as the prosecutor realized his mistake, he corrected the misstatement, and then withdrew the question. There was no mention of a victim’s name or any other identifying characteristics of the crime to which the prosecutor alluded. In fact, the matter was handled so quickly and unobtrusively, it is highly unlikely the jury was aware the prosecutor referenced inadmissible evidence. This assignment is without merit.

DEFENDANT’S ASSIGNMENT OF ERROR NUMBER 4

In a final assignment, the defendant complains that his sentences on all four counts of first-degree robbery are excessive.
This Court’s ruling on the State’s assignment of error as to the defendant’s multiple offender status, see supra, pretermits review of the excessive sentence issue as it applies to the enhanced sentences on counts three and four.
However, as to the sentences on counts one and five, the defendant’s sentencing exposure was imprisonment at hard labor for not less then three nor more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence. La.Rev.Stat. Ann. § 14:64.1. The trial court imposed the statutory maximum on each count.
Article I, Section 20, of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in article 894.1 of the | ^Louisiana Code of Criminal Procedure, which sets forth circumstances requiring imprisonment. State v. Soco, 441 So.2d 719, 720 (La.1983). If adequate compliance with article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Brogdon, 457 So.2d 616, 625 (La.1984); State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982); State v. Guajardo, 428 So.2d 468, 472-73 (La.1983).
In this case, although the trial judge did not make specific reference to article 894.1, the trial court’s failure to comply with La.C.Cr.P. art. 894.1 does not automatically render the sentence invalid. In State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819, this Court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing j court shall not set aside a *918 sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
96-1214, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, S 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating hfithat it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.” State v. Wimberly, 414 So.2d 666, 672 (La.1982).
In this case, the defendant contends that because neither victim was injured during the robberies, the statutory maximum sentences imposed are excessive.
The defendant robbed Ms. Zelaya in broad daylight as she was on her way to work. He exposed the gun in his waistband, and demanded her purse and keys. The jury listened to the audiotape of Ms. Zelaya’s 911 call, and heard the terrified victim crying and barely able to speak. While Ms. Zelaya may not have been injured physically, she suffered emotional trauma; in fact, she testified that she still panics upon seeing someone approaching her on a bicycle.
Turning to Ms. Farkouh, the defendant entered her home and demanded money. He terrorized her, implying he had a gun, which he indicated he would use if she did not do as he said. Although Ms. Farkouh, like Ms. Zelaya, suffered no physical injury, the defendant has destroyed her sense of home security.
The record clearly shows an adequate factual basis for the sentence imposed. The trial court did not abuse its sentencing discretion. This assignment has no merit.

CONCLUSION

For the foregoing reasons, we affirm the convictions; affirm the sentences on counts one and five; reverse the multiple offender adjudication; vacate the multiple bill sentences on counts three and four; and remand for further sentencing proceedings on the multiple bill.

. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (holding that it is constitutional for a trial court to accept a guilty plea to a lesser charge when a defendant maintains innocence but there is strong evidence of guilt).

. Ms. Zelaya married prior to trial. She now uses the name Karla Zelaya Burman.