| .WALTZER, J.
STATEMENT OF THE CASE
Defendant Joseph J. Harris was charged by bill of information with distribution of cocaine, a violation of La. R.S. 40:967.[1] Defendant pleaded not guilty at his arraignment. The trial court denied defendant’s motion to suppress and this court denied defendant’s writ application.[2] Defendant was found guilty as charged on 29 March 1999, following trial by a twelve-person jury. On 24 September 1999, the trial court denied defendant’s motions for new trial and for post-verdict judgment of acquittal. The court held a multiple bill hearing at which evidence was taken. Defendant was adjudicated a second-felony habitual offender on 24 September 1999, and, defendant having waived sentencing delays, the trial court sentenced him to serve twenty years at hard labor, with credit for time served, without benefit of probation, parole or suspension of sentence for five years, concurrent with any other sentences. The trial court denied defendant’s motion to reconsider sentence. Defendant appeals his conviction and sentence.
1 r,FACTS
New Orleans Police Sergeant Patrick Michael Brown supervised a “buy-bust” operation in the area of Louisiana Avenue and LaSalle Street on 16 July 1998, after which defendant and two other individuals were arrested. Detective Michael Harrison was given ten ten-dollar bills and five one-dollar bills, with which he and Det. Adam Henry were to purchase drugs. Sgt. Brown identified photocopies of those bills. The undercover vehicle Det. Harrison drove in the operation was outfitted with video and audio recording equipment, and other officers could hear what was transpiring via a radio signal. Det. Yvonne Farve acted as an observer in a separate vehicle. Det. Jeffery Robertson photographed defendant and the two other individuals during the buy, and all three were arrested at the scene after Dets. Harrison, Henry and Farve identified them as having been involved in selling crack cocaine to Dets. Harrison and Henry. Sgt. Brown recovered thirty-seven dollars from defendant, including two of the ten-dollar bills that had been photocopied and given to Det. Harrison.
Detective Yvonne Farve testified that she observed an individual later determined to be Eddie Cates approach the *424 passenger side of the vehicle in which Dets. Harrison and Henry were riding and converse with them. Det. Harrison handed Cates some money, and Cates walked over to another individual, later determined to be Leon Winsey. Cates and Winsey walked into an alley, and immediately walked out. As the two talked, an individual later determined to be defendant rode up on a bicycle. Defendant dumped something out of his mouth and handed it to Cates. Cates handed defendant some money, and defendant rode off on his bicycle. Det. Farve identified photographs of defendant, Cates and 13Winsey. Det. Farve said she did not see Cates hand anything to Winsey, or see Winsey hand anything to Cates.
Detective Adam Henry testified that Cates and Det. Harrison discussed the purchase of two ten-dollar pieces of crack cocaine. Det. Harrison gave Cates two ten-dollar bills. From three or four houses away, Det. Henry observed Cates meet with Winsey. Defendant spit out two pieces of crack cocaine and handed them to Cates. Cates then gave money to defendant. Cates brought the drugs back to Dets. Harrison and Henry. The officers gave Cates two dollars for conducting the transaction and left the area. Det. Henry said he did not write the police report in the case, and was unaware the report did not reflect that defendant had anything in his mouth.
Detective Michael Harrison testified similarly to Det. Henry. Cates flagged down the officers on Louisiana Avenue, and directed them to make a U-turn. When Cates approached the car again, Det. Harrison gave him two ten-dollar bills for two pieces of crack cocaine. Cates immediately turned around and called out to Winsey. Cates walked over to Winsey, and the two walked a short distance. Winsey went into an alley, returning a moment later. Defendant then rode up on a bicycle. Winsey directed him to Cates. Cates gave defendant the money, and defendant gave Cates small objects later determined to be crack cocaine. Det. Harrison identified a videotape recording of the transaction between he and Cates, which videotape was played for the jury. Det. Harrison identified Cates and Winsey on the videotape. Det. Harrison also said that one could see defendant’s head for an instant as he rode by on his bicycle. However, it appeared unclear whether the person riding past on the videotape was in fact defendant. Det. LHarrison was certain he saw defendant put objects into Cates’ hand, and saw Cates come over to the police vehicle and open that same hand to reveal cocaine.
Eddie Cates testified that he pleaded guilty to distribution of cocaine in connection with the case, in exchange for a sentence of eight years at hard labor. He admitted a number of felony convictions, including four for burglary, one for being a convicted felon in possession of a firearm, and one for simple escape. He testified that on the day in question two men called out to him as he sat on a porch after work drinking a quart of beer. The men said they would pay him a few dollars if he got two rocks of crack cocaine for them. He saw Leon Winsey, and knew him to be involved with drugs. Winsey did not have any drugs, but walked into an alley, and came back, shortly before defendant came riding up on a bicycle. Defendant spit some rocks of crack cocaine out of his mouth and gave Cates two in exchange for the two ten-dollar bills. Cates said defendant rode off, and he delivered the cocaine to the officers. Cates identified the Polaroid photographs taken that day of him, Winsey and defendant. Cates admitted on cross examination that he had not been sentenced in connection with the case. Cates further admitted that he had used *425 drugs in the past, but claimed he was not a drug addict and said he never sold drugs.
It was stipulated that if Corey Hall were called as a witness he would be qualified in the analysis of controlled dangerous substances, and would testify that the two objects in this case tested positive for the presence of cocaine.
Kendall Green, an attorney employed by the Orleans Indigent Defender Program, testified that he represented Eddie Cates in connection with his plea bargain in the case. He stated that | Rhis client had waived his attorney-client privilege so that he could testify to the circumstances of the plea. Mr. Green stated that Eddie Cates faced possible life imprisonment as a habitual offender if convicted of the crime with which he was charged in connection with the instant case. Cates agreed to plead guilty in exchange for a sentence of eight years, with the understanding that he would testify truthfully at defendant’s trial. Originally, the plea agreement had not required Cates to testify. However, Cates had offered to do so on the day of defendant’s trial, and that requirement became part of the plea agreement. Mr. Green stated that Cates was willing and cooperative about testifying, that no one told his client to lie, and that he told his client to testify truthfully.
Defendant testified that his real name was Joseph Jones, not Joseph Harris, which was the name of his father. He explained that he used his father’s name when previously arrested, and now his fingerprints matched that name. Defendant admitted a prior felony conviction for aggravated battery. He said the testimony of the police officers and Eddie Cates was not correct. He claimed to have been coming from the Rite-Aid drug store on St. Charles Avenue, when he encountered Eddie Cates and Leon Winsey. Cates owed defendant’s sister some money, and she had told Cates to give it to defendant. Defendant rode his bicycle up to Cates, who gave him two ten-dollar bills. Defendant said he had only met Cates and Win-sey once before, when he was helping his sister move. On cross examination defendant admitted a prior misdemeanor conviction for carrying a concealed weapon.

ERRORS PATENT

A review of the record reveals no errors patent.

\ ¿FIRST ASSIGNMENT OF ERROR: The evidence was insufficient to support defendant’s conviction.

This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus- *426 sail; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
Defendant was charged with and convicted of distribution of cocaine, in violation of La. R.S. 40:967(A), which makes it unlawful for any person to |7knowingly or intentionally, among other things, distribute a controlled dangerous substance classified in Schedule II, which includes cocaine. See La. R.S. 40:964. A defendant distributes a controlled dangerous substance when he transfers possession or control of it to his intended recipient. State v. Cummings, 95-1377, p. 4 (La.2/28/96), 668 So.2d 1132, 1135; see also La. R.S. 40:961(14). The state must show (1) “delivery” or “physical transfer;” (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. State v. Kanost, 99-1822, p. 4 (La.App. 4 Cir. 3/29/00), 759 So.2d 184, 187, writ denied, 2000-1079 (La.11/13/00), 773 So.2d 726. Guilty knowledge need not be proven as fact, but may be inferred from the circumstances. State v. Porter, 98-2280, p. 3 (La.App. 4 Cir. 5/12/99), 740 So.2d 160, 162.
The testimony of Dets. Harrison and Henry, and that of Eddie Cates, established that defendant transferred possession of crack cocaine to Cates. Defendant accepted money from Cates in exchange for the cocaine. Defendant was arrested within minutes after the transaction and found in possession of two ten dollar bills that Det. Harrison had given to Cates to obtain cocaine for him and Det. Henry. While defendant points to alleged discrepancies with regard to the facts testified to by the two detectives, this goes to the weight of the evidence rather than sufficiency. The jury believed the testimony of the detectives and Eddie Cates, and found defendant’s tale incredible. A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Harris, 99-3147, p. 6 (La. App. 4 Cir. 5/31/00), 765 So.2d 432, 435. It cannot be said that the jury’s credibility decision in the instant case was clearly contrary to the evidence.
| ¡/There is no merit to this assignment of error.

SECOND ASSIGNMENT OF ERROR: The State failed to produce a perfect transcript of the guilty plea colloquy from his prior guilty plea, and thus failed to prove that he was a second-felony habitual offender.

In State v. Alexander, 98-1377 (La.App. 4 Cir. 2/16/00), 753 So.2d 933, we held:
*427 LSA-R.S. 15:529.1 D(l)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Supreme Court stated:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than the “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights, (footnotes omitted).
98-1377 at pp. 5-6, 753 So.2d at 937.
|flDefense counsel objected at the habitual offender hearing that the evidence presented by the State did not reflect a knowing and voluntary guilty plea by defendant to the prior felony, thus preserving this issue for review.
The State presented a minute entry reflecting that on 29 May 1996, in case number 383-225, Joseph J. Harris, attended by counsel, pleaded guilty as charged to a violation of La. R.S. 40:967, and was sentenced pursuant to La. R.S. 40:983 to five years probation, with special conditions. The minute entry reflected that, prior to entering the plea, the defendant was interrogated by the court as his right to trial by jury, his right to face his accusers, his right against self-incrimination, and his right to an appeal. The defendant answered in the affirmative and announced to the court that he understood those rights. A docket master in case number 383-225 reflects the 29 May 1996 guilty plea and a sentence of five years probation under La. R.S. 40:983.[3] The State also introduced a plea of guilty form in case number 383-225, dated 29 May 1991, reflecting that a Joseph J. Harris, represented by counsel — different counsel than that reflected by the 29 May 1996 minute and docket master entries — waived his right to a trial by judge or jury, his right to an appeal, his right to face and cross-examine the witnesses against him, his right to compulsory process, and his right against self-incrimination, and pleaded guilty to possession of cocaine.
Defendant contends that there is an irregularity with regard to the plea of guilty *428 form, as the year shown is 1991, while the year on all of the other documents is 1996. Defendant claims the State was required to present a perfect transcript. However, even assuming defendant met his burden of showing some 110procedural irregularity in the taking of the guilty plea, the State was not required, under Shelton, to produce a transcript of the guilty plea proceeding. The trial court was able to weigh other evidence to determine whether the State has met its burden of proving that the defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. The evidence presented by the State ‘ establishes that defendant’s prior guilty plea was informed and voluntary, and made with an articulation of the three Boykin rights.[4]
Defendant also argues that the State failed to prove that he was the same person who pleaded guilty to the prior offense. To prove a defendant is a habitual offender under La. R.S. 15:529.1, the State is required to establish the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Anderson, 99-1407, p. 6 (La.App. 4 Cir. 1/26/00), 753 So.2d 321, 325. Proof of identity can be established through a number of ways, such as the testimony of witnesses to prior crimes, expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding, or photographs contained in a duly authenticated record. State v. Isaac, 98-0182, p. 7 (La.App. 4 Cir. 11/17/99), 762 So.2d 25, 28-29, writ denied, 2000-0239 (La.1/26/01), 781 So.2d 1255. It is sufficient to match fingerprints on an arrest register to a defendant, and then match the arrest register to a bill of information and other documents evidencing conviction and sentence; this can be done through a date of birth, social security number, bureau of identification number, case number, specifics and details of the offense charged, etc. See Anderson and Isaac, supra.
|nIn the instant case, New Orleans Police Officer Raymond Loosemore, an expert in the field of fingerprint matching, testified at the habitual offender hearing that he took defendant’s fingerprints on the day of the hearing, and matched those to fingerprints on the back of S-2, a certified copy of an arrest register introduced in evidence by the State, reflecting the 15 April 1996 arrest of Joseph J. Harris, 518 Apple Street, date of birth, 6/6/75, for possession with intent to distribute crack cocaine. The State also introduced an Orleans Parish District Attorney’s Office screening form, dated 21 May 1996, in case number 383-225, reflecting that a charge of possession of cocaine (the original charge of possession with intent to distribute was refused) was accepted against Joseph J. Harris, 518 Apple Street, date of birth 6/6/75. A 23 May 1996 bill of information in case number 383-225 reflects the indictment of Joseph J. Harris, 518 Apple Street, for possession of cocaine on 15 April 1996. The previously mentioned minute entry, docket master entry, and guilty plea form reflect that the Joseph J. Harris in case number 383-225 pleaded guilty to possession of cocaine. While the guilty plea form reflects the year 1991, that obviously is a clerical mistake, as the other matching documents reflect that the year was 1996. While defendant disputes that he has a middle initial of “J.,” the bill of information in the instant case reflects the indictment of Joseph J. Harris. This evidence produced by the State was sufficient to prove that defendant was one and the same person who previously pleaded *429 guilty to possession of cocaine after knowingly and intelligently waiving his Boykin rights.
There is no merit to this assignment of error.

U,THIRD ASSIGNMENT OF ERROR: Defendant’s sentence is unconstitutionally excessive.

La. Const, art. I, § 20 explicitly prohibits excessive sentences. State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the 113circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185, unit denied, 99-2632 (La.3/17/00), 756 So.2d 324.
However, in State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Landos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial *430 court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentenc-ing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.” State v. Wimberly, 414 So.2d 666, 672 (La.1982).

Id.

As a second-felony habitual offender, defendant was subject to sentencing j Uunder La. R.S. 15:529.1(A)(l)(a), providing for in his case a minimum sentence of not less than one-half the longest term and a maximum sentence of not more than twice the longest term prescribed for a first conviction. La. R.S. 40:967(B)(4)(b) provides that upon conviction for distribution of cocaine a defendant shall be imprisoned at hard labor for not less than five years nor more than thirty years, with the first five years without the benefit of parole, probation of suspension of sentence. Thus, defendant was subject to a mandatory minimum sentence of fifteen years at hard labor, with a maximum sentence of sixty years. Defendant was sentenced to twenty years, without the benefit of parole, probation or suspension of sentence for the first five years.
The transcript of the habitual offender hearing reflects that defendant had one other conviction besides that for possession of cocaine. In 1996 he was convicted of carrying a concealed weapon, a misdemeanor offense. The State represented that defendant also had an extensive arrest record of fourteen felony and twenty-four misdemeanor arrests as an adult and as a juvenile, an allegation not disputed by defendant’s trial or appellate counsel. The trial court acknowledged that co-defendant Eddie Cates was to receive a sentence of only eight years for actually transferring possession of the cocaine to Dets. Harrison and Henry. The court noted, however, that without defendant there would have been no cocaine. The court noted that it had considered the sentencing guidelines and the factors set forth in the Louisiana Code of Criminal Procedure. Appellate counsel argues that the evidence suggests that defendant was “not a usual drug dealer, but a user, who happened, if the testimony is taken at face value, to get caught in a situation of opportunity, whereby he was able to make a few extra dollars for providing the cocaine reserved for his own use to one of the men in the | ^neighborhood who was searching for the drug.” There is no evidence to support this scenario. It can be noted that defendant’s prior conviction arose out of an arrest for possession with intent to distribute six rocks of crack cocaine. Also, defendant had the prior conviction for carrying a concealed weapon. Defendant suggests that he was penalized for having gone to trial. However, the district attorney made the decision to charge defendant as a habitual offender. The fact that the trial court’s sentence was five years more than the minimum — when it could have been forty-five years more than the minimum— does not support defendant’s contention.
Defendant received a sentence of five more years than the minimum, and forty years less than the maximum. Defendant has failed to show that his twenty-year sentence makes no measurable contribution to acceptable goals of punishment, is *431 nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.
There is no merit to this assignment of error.

CONCLUSION

For the foregoing reasons, we affirm defendant’s conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.

. Defendant was charged along with two co-defendants, Eddie J. Cates and Leon Winsey. The charge against Winsey was dismissed on 13 April 1999. Cates pleaded guilty as charged on 29 March 1999.

. State v. Harris, unpub., 98-2528 (La.App. 4 Cir. 11/9/98) (adequate remedy on appeal).

. An April 17, 1998 minute entry, and docket master, reflect that in case number 383-225 the defendant's probation was revoked and he was sentenced to one year at hard labor with credit for all time served.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).