848 So.2d 58 (2003)
STATE of Louisiana
v.
Edward SIMMONS.
No. 2002-KA-0253.
Court of Appeal of Louisiana, Fourth Circuit.
May 14, 2003.
*61 Eddie J. Jordan, Jr., District Attorney, Leslie Parker Tullier, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.

STATEMENT OF CASE
On April 16, 2001, the State charged Edward Simmons in an 18-count bill of information. The State nolle prossed counts 1, 3, 4, 5, 8, 9,10, 11, 12, 13 and 14 on May 3, 2001. On July 26, 2001, the State nolle prossed counts 6 and 8.
The remaining six counts charged the defendant with simple burglary (counts 2 and 7), violations of La. R.S. 14:62; aggravated burglary of an inhabited dwelling (count 15), a violation of La. R.S. 14:60; false imprisonment while armed with a dangerous weapon (count 16), a violation of La. R.S. 14:46.1; aggravated sexual battery (count 17), a violation of La. R.S. 14:43.2, and possession of cocaine (count 18), a violation of La. R.S. 40:967(C)(2).
On July 26, 2001, the State amended count 2 of the bill of information to charge the defendant with attempted burglary of an inhabited dwelling. The court found probable cause, and denied motions to suppress identification, as to counts 7, 15, 16 and 17. Immediately prior to trial on September 17, 2001, the State amended counts 7 and 17 to attempted simple burglary and sexual battery, respectively. The jury acquitted the defendant on count 7 but found him guilty as charged on counts 15, 16, 17 and 18.[1]
During the trial, the defendant personally objected to his trial attorney's alleged lack of preparation and asked for new counsel. The request was denied, but a recess was taken for the defendant and his attorney to confer. After the break, the defense attorney raised the issue of misjoinder of the offenses under La. C. Cr. P. art. 493.2 as a motion for mistrial. The court denied the motion and the trial continued.
On October 15, 2001, the State filed a multiple bill as to count 15, charging the defendant as a quadruple offender.
On November 6, 2001, the defendant's motions for new trial, post verdict judgment of acquittal, and arrest of judgment were denied. At the multiple bill hearing that same day, the court adjudged the defendant a fourth offender, and sentenced him to thirty years at hard labor, sentence to run consecutively with the sentences on the remaining counts, and consecutively with any other sentence imposed, with credit for time served, without benefit of probation, parole, or suspension of sentence. The court also denied the defendant's motion to reconsider sentence, but granted his motion for appeal. The court vacated its original sentence and re-sentenced the defendant on count 15 as a fourth offender to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence, to be *62 served consecutively to the sentences on the remaining counts. The court denied the motion to reconsider.
The trial court delayed sentencing to April 4, 2002, on the remaining counts pending the results of the pre-sentence investigation.
On October 18, 2002, the defendant re-urged, and the court denied, his motions for new trial and post verdict judgment of acquittal. That same day, the court sentenced the defendant on count 16 to ten years at hard labor, and another ten years on count 17, restricting the sentences to be served consecutively to each other and all other sentences. On count 18, the court included the consecutive restriction, and sentenced the defendant to five years. The court denied the defendant's motion to reconsider sentence but granted his motion for appeal.

STATEMENT OF FACT[2]
Officer Scott Wilson testified that on January 27, 2001, he investigated complaints lodged by John and Cynthia Dubberley of sexual battery, aggravated burglary and false imprisonment with a weapon. When Wilson arrived at the Dubberley residence during the middle of the night, he noted signs of forced entry and observed the Dubberleys' bedroom in disarray, with clothing and furniture thrown about the room. Wilson attempted to speak with Mrs. Dubberley, but she was very upset and quite emotional. Mrs. Dubberley gave a description of the perpetratorblack male with dark complexion, 5'10", weighing approximately 170 pounds. Officer Wilson compiled a photographic lineup from which Mr. and Mrs. Dubberley identified the defendant as their assailant. Wilson made an in-court identification of the defendant as the person whose picture the Dubberleys chose from the photographic lineup.
Later that evening, Officer Louis Rivas arrested the defendant pursuant to a warrant. When Officer Wilson arrived at the arrest scene, he found that Officer Rivas had confiscated from the defendant a piece of telephone cord, a pocket knife, three pieces of crack cocaine and several sets of keys. The Dubberleys' car and house keys were among the items confiscated from the defendant.
Officer Louis Rivas testified and corroborated Officer Wilson's testimony concerning the defendant's arrest and search, and the items confiscated from him on January 27, 2001. Rivas identified in court the items he seized from the defendant.
Corey Hall, NOPD criminalist II and expert in the analysis and identification of controlled substances, testified that he tested the three rock-like substances seized from the defendant at the time of his arrest, and that testing proved the substance to be cocaine.
Detective Clifton Neely investigated the Dubberley incident of January 27, 2001. Neely stated that he questioned Mrs. Dubberley later in the day after the incident. She told him that shortly after midnight on January 27, 2001, she awoke to the sound of her husband struggling with an intruder. The intruder forced his way into the bedroom, knocking Mr. Dubberley, who was trying to hold the bedroom door shut against the intruder, to the floor. The intruder grabbed Mrs. Dubberley by her arm, and informed her and her husband that he had a knife. The intruder tied Mr. Dubberley's hands with a pair of black pantyhose, and told Mrs. Dubberley to *63 lead him to the valuables. The intruder dragged Mrs. Dubberley into the hallway. Mrs. Dubberley broke away from the intruder, and ran to the telephone. The intruder overpowered Mrs. Dubberley, pushed her against the wall, and punched her in the face. He dragged her back into the bedroom, where he proceeded to further tighten the bindings on Mr. Dubberley's hands. Next, the intruder blindfolded Mrs. Dubberley, held a knife to the back of her neck, and once again took her into the hallway. He pushed her to the floor, and inserted his finger into her vagina, after which he fled the house with a few articles. After speaking with Mrs. Dubberley, the detective transported her to the hospital for a sexual assault examination.
Ms. Deborah Ratterree, the Director of the Sexual Assault Nurse Examiner Program at Charity Hospital, testified that she examined Mrs. Dubberley on January 27, 2001. Ms. Ratterree testified that Mrs. Dubberley suffered multiple contusions and bruising on her left side, left knee, head, chest and soreness of her jaw. Ms. Ratterree also noted ligature marks on Mrs. Dubberley's wrists. During the exam, Mrs. Dubberley was very upset, weepy, shaky, and had difficulty talking about her ordeal.
Mrs. Cynthia Dubberley testified. She told the court that shortly after midnight on January 27, 2001, she awoke to the sound of an intruder trying to force his way into her bedroom. Her husband attempted to keep the door closed; however, the intruder overpowered her husband. The intruder tied up Mr. Dubberley with a pair of pantyhose, and ordered Mrs. Dubberley to bury her face in her pillow. The intruder told the Dubberleys he was looking for valuables, and proceeded to ransack the bedroom looking for her purse and Mr. Dubberley's wallet. Mrs. Dubberley got a good look at the intruder's face as he searched for valuables. The Dubberleys directed the intruder to Mr. Dubberley's wallet in the bedroom, and told him Mrs. Dubberley's purse was in the front room. The intruder blindfolded Mrs. Dubberley, tied her hands behind her back, and walked her to the front room. As they walked, the intruder held a knife to her throat, and began rubbing his genitals against her buttocks. He told her to relax and asked her, "What's the matter? I know you've been f___ed before." The intruder drove away from the Dubberley residence in Mrs. Dubberley's car.
Later that day, she identified the intruder from a photographic lineup and subsequently identified her house and car keys among items found on the defendant the night he was arrested. At trial she identified the defendant as the man who brutalized her and her husband on January 27, 2001.
Mr. John Dubberley testified that an unfamiliar noise in his house woke him shortly after midnight on January 27, 2001. When he opened his bedroom door, an intruder was standing less then four feet from him. Dubberley attempted to close the door, but the intruder forced his way into the bedroom. The intruder knocked Dubberley to the floor, grabbed Mrs. Dubberley and threatened her with a knife if Dubberley continued to struggle with him. The intruder ordered Dubberley to lie on the floor, and tied his hands and feet. The intruder then tied Mrs. Dubberley's hands, and began rummaging through the room looking for valuables. Mrs. Dubberley accompanied the intruder to the front of the house to retrieve her purse. After the intruder and Mrs. Dubberley left the bedroom, Mr. Dubberley heard a struggle. The intruder returned to the bedroom, and held a metallic object to Dubberley's throat, threatening to kill *64 them both if they did not stop fighting him. Before leaving the residence, the intruder took a key to the house and the key to Mrs. Dubberley's car, in which he drove away. The Dubberleys called 911 and reported the incident.[3] Mr. Dubberley later identified the defendant from a photographic lineup, and at trial, as the intruder who battered, and terrorized him and his wife.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment, the defendant argues that the trial court erred in denying his motion for severance or mistrial based upon misjoinder of offenses. He contends that because conviction of possession of cocaine allows imprisonment with or without hard labor, La. R.S. 40:967(C)(2), that charge should have been tried by a jury of six pursuant to La. C.Cr.P. art. 782, rather than a twelve-member jury.[4]
Mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to a defendant which effectively deprives him of a fair trial. The Louisiana Supreme Court has held that the determination of whether to grant a mistrial under C.Cr.P. art. 775 is within the trial court's sound discretion, and its denial of a motion for mistrial should not be disturbed on appeal absent an abuse of discretion. State v. Brown, 2000-2524 (La.App. 4 Cir. 7/25/01), 793 So.2d 422 (citing State v. Smith, 433 So.2d 688 (La.1983)). The applicable standard to determine whether a mistrial should have been granted is whether the defendant "suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial." Id. (citing State v. Smith, 433 So.2d at 696).
The number of persons required for a jury in a criminal case is dictated by La. Const. art. 1, § 17(A), which provides:
(A) A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of who must concur to render a verdict ...
Also, La.C.Cr.P. art. 782(A) provides, in pertinent part, that "Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict."
The trial court is vested with much discretion in determining whether to grant a motion to sever, and its ruling should be upheld in the absence of an abuse of this discretion. State v. Sam, XXXX-XXXX (La.App. 4 Cir. 4/19/00), 761 So.2d 72, writ denied XXXX-XXXX (La.9/14/01), 796 So.2d 672. Generally, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime." State v. Carter, 99-2234 (La.App. 4 Cir. 1/24/01), 779 So.2d *65 125, 145, writ denied, XXXX-XXXX (La.2/11/02), 808 So.2d 333 (citing State v. Lewis, 557 So.2d 980, 984 (La.App. 4 Cir. 1990)). The defendant has a heavy burden of proof when alleging prejudicial joinder of offenses, and he must make a clear showing of prejudice. Id. In determining whether joinder of two or more offenses would result in prejudice, a court should consider: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Coston, XXXX-XXXX (La.App. 4 Cir.9/5/01), 800 So.2d 907, 914.
The trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. State v. Lee, 99-1404 (La.App. 4 Cir. 5/17/00), 764 So.2d 1122, 1126 (citing State v. Washington, 386 So.2d 1368 (La. 1980)).
In support of his position, the defendant cites La.C.Cr.P. art. 493.2, which provides:
Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. (emphasis added).
The defendant maintains that the possession of cocaine charge was not of the same or similar character as the other charges, nor based upon the same act or transaction from which the other charges arose, had nothing to do with the other charges, and, in fact, occurred after the incident which spawned the other charges. Moreover, he points out that aggravated burglary and possession of cocaine are not triable by the "same mode of trial." La.C.Cr.P. art. 493. A conviction for aggravated burglary mandates a sentence of imprisonment at hard labor, thus requiring trial by a jury of twelve, while a conviction for possession of cocaine permits sentencing with or without hard labor[5], for which trial by a six-member jury is mandated. La. Const. art. 1, § 17(A). As such, the defendant argues, the possession of cocaine charge should not have been tried with the other counts of the bill of information.
Conversely, the assistant district attorney argued that the cocaine possession was part of the same transaction or scheme because it was recovered in the defendant's possession on the same day that he was arrested along with evidence from the Dubberleys' burglary. Additionally, the state attorney asserts that the only mechanism for challenging misjoinder is found in La.C.Cr. P. art. 495, which provides: "The objections of misjoinder of defendants or misjoinder of offenses may *66 be urged only by a motion to quash the indictment." The defense attorney filed a form packet of motions (thirteen in all) prior to the trial, which contained a motion to sever, but not a motion to quash. The district attorney correctly asserts that the defendant's only remedy, as provided for in Article 495 was in the form of a motion to quash the indictment based on misjoinder of offenses.
Moreover, the district attorney is also correct in arguing that even if the trial court erred in allowing the joinder of the offenses, the error is subject to a harmless error analysis. The Louisiana Supreme Court addressed this issue in State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218, where the court explained:
The distinction between misjoinder and prejudicial joinder is an important one, but only at the trial level to determine whether a defendant's proper remedy is a motion to quash or a motion to sever. At the appellate level, the distinction becomes blurred since the basis for the prohibition against both misjoinder and prejudicial joinder is essentially, prejudice to the defendant
. . . .
This conclusion is bolstered by federal authority. Subsequent to [State v.] McZeal, [352 So.2d 592 (La.1977)], the federal courts have determined that misjoinder under Rule 8, Federal Rules of Criminal Procedure, is subject to harmless-error analysis and is not reversible error per se. See United States v. Lane, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 ... (1986).
Strickland, pp. 13-14, 683 So.2d at 226 (some citations omitted) (emphasis in original).[6]
In this case, the defendant has made no showing of prejudice. He was tried and convicted of aggravated burglary, false imprisonment with a dangerous weapon, sexual battery and possession of cocaine. The aggravated burglary, false imprisonment and sexual battery charges stemmed from one incident involving one set of victims.
The possession of cocaine, however, was discovered many hours later when the defendant was arrested and searched pursuant to the arrest. Although the cocaine was discovered in the defendant's pocket along with evidence from the earlier crimes, i.e., keys to the victim's house and car, pocketknife, and telephone wire, the cocaine possession was separated from the other crimes by eighteen or more hours.
The requirement of Article 493.2 that allows for joinder of offenses that are generally not appropriately tried together still provides some restriction on the ability to join the offenses. In order to be joined in the indictment, the offenses must be "connected together or constitut[e] parts of a common scheme or plan."
In the instant case, although there is a reasonable inference that the burglary may have been committed to further the acquisition of cocaine, which was later found upon the defendant's arrest, the link between the two events is so attenuated that it fails to satisfy the statutory requirement of the offenses being sufficiently connected. Therefore, we hold that the conviction and sentence relative to Count 18, Possession of Cocaine, must be vacated.
Vacating the cocaine possession conviction and sentence does not disturb the convictions and sentences for the other *67 crimes. The facts of the offenses were not confusing or complex, thus, there was little likelihood that the jury was confused by the State's presenting evidence of all of the crimes together. Thus, we affirm the convictions and sentences for Counts 15, 16, and 17.

ASSIGNMENT OF ERROR NUMBER 2
In a second assignment, the defendant argues that his sentences are excessive as a result of the cumulation of all the charges for trial. Further, the defendant claims the trial judge erred ordering that he be sentenced to consecutive sentences.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97-1095 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 656 So.2d at 979; State v. Washington, XXXX-XXXX (La.App. 4 Cir. 7/18/01), 793 So.2d 376.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Harris, XXXX-XXXX (La. App. 4 Cir. 4/18/01), 787 So.2d 420, writ denied, XXXX-XXXX (La.4/26/02), 813 So.2d 1101. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Robichaux, XXXX-XXXX (La.App. 4 Cir. 3/14/01), 788 So.2d 458, writ denied, XXXX-XXXX (La.3/15/02), 811 So.2d 897. In State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
Major, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence *68 might have been more appropriate.'" State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." State v. Wimberly, 414 So.2d 666, 672 (La. 1982).
Id. (citations omitted)
In State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, the defendant argued that his mandatory life sentence for second-degree murder was excessive under State v. Dorthey, 623 So.2d 1276 (La. 1993). This court rejected the defendant's argument, stating:
When a trial judge determines a sentence from a carefully tailored penalty statute, such as La. R.S. 14:30.1(B), there is a strong presumption that the sentence is within constitutional parameters. Appellant has not succeeded in proving and the record does not clearly show that under the facts of this case the trial judge abused his sentencing discretion.
Id., 669 So.2d at 526.
Before sentencing the defendant in this case, the trial judge reviewed the defendant's "extensive" juvenile record as contained in the presentence investigation report, but indicated it would have no bearing on the defendant's sentence. The judge then considered the guidelines promulgated in C.Cr.P. art. 894.1, and read portions of the presentence investigation report into the record as further support for the sentences imposed:[7]
... Mr. Simmons has an adult record that dates back to June 7th of 1980 when he was arrested by members of the New Orleans Police Department for the offense of attempted forcible rape. He was arrested by [the NOPD] for simple burglary of an automobile and on or about the 17th day of March, 1980, he entered a plea of guilty as charged and was sentenced to serve three years at hard labor ... suspended and five years active probation. On or about the 20th of May, 1983 ... probation was revoked and he was ordered to serve three years at hard labor ... He was arrested for the offense of forgery on or about the 20th day of August, 1981; case refused...
On or about the 12th day of October, 1982 ... a jury found the offender not guilty on all four counts of forgery ... He came back into the system on or about the 8th day of September, 1983 for the offense of forgery ... entered a plea... of guilty ... and was sentenced to serve three years at hard labor ...
On or about the 17th day of June 1985, the defendant was arrested by the St. Bernard Sheriff's office for ... theft of a geological survey and on or about the *69 29th day of October, 1985 entered a plea of guilty to a lesser charge and received two years inactive probation ... next... involvement with law enforcement was on or about the 7th day of September 1987, where (sic) he was arrested by.. the [NOPD] for aggravated battery. On or about the 16th day of October 1987, the District Attorney refused to prosecute ...
On the 24th of November 1987, the subject was arrested for attempted simple burglary. The case was refused ... On November the 19th, 1988, the offender entered a plea of guilty to criminal trespass and sentenced to six months ... The sentence was suspended and he was placed on two years active probation. On or about the 1st day of July 1988, the defendant was arrested by ... the [NOPD] for possession of stolen property valued at under one hundred dollars. That was refused, prosecuted on other charges. According to the report, those other charges were found and charged in Case Number 328-065-G, and on or about the 16th of November, 1988, ... the jury found the offender guilty as charged. On the 23rd of November, 1988, the [State] filed a multiple bill of information charged the offender as a second offender. He pled guilty to said multiple bill and was sentenced to serve five years at hard labor...
... the [NOPD] arrested the offender on or about the 4th of December, 1993, for ... criminal trespassing with possession of drug paraphernalia. The District Attorney refused those charges and prosecuted instead possession of cocaine and unauthorized entry of a place of business ... The bill of information was amended ... to read possession of cocaine and criminal trespass. He entered a plea of guilty as charged. He was sentenced to pay a five hundred dollar fine for the criminal trespass and was sentenced to serve three years ... for possession of cocaine .... the [NOPD] arrested the offender on the 20th day of June, 1995, for the offense of criminal trespass. Said arrest did not result in a conviction for that charge because the District Attorney chose to prosecute attempted burglary of an inhabited dwelling... The court found the defendant guilty as charged, and on the 28th day of May, 1996, the defendant ... was sentenced to serve five years at hard labor... The District Attorney filed a multiple bill charging the offender as a quadruple offender. He entered a plea of guilty as charged to the multiple bill and he was [adjudicated] a triple offender. The court set aside the previous sentence and sentenced him to serve five years at hard labor ...
His next encounter with ... the [NOPD] was on or about the 27th day of January, 2001 which led up to the myriad of charges that were originally charged in the bill of information [in this case]. As the record indicates, several counts of that bill were nolle prosequid by the Assistant District Attorney on or about the 3rd day of May 2001. The court also reviewed Sections C, D, E, and Section 3 of this report and is also cognizant of the findings listed in Subsection 4 of the report. The defendant is not eligible for intensive incarceration or intensive parole supervision, as per [La. R.S. 15:574.4(8) ]. Probation is not recommended, and he is not eligible for a probationary sentence. The ... court notes that Edward Simmons is 42 years old and is a sixth offender currently serving the balance of his natural life as a habitual felony convict. Since the age of fourteen years old until now, the offender's life consisted of arrests, convictions, and service of time ... For the *70 majority of his life, the offender has knowingly and intentionally engaged in criminal behavior or [sic] even after receiving a second and third chance through probation and courtesy of a good time supervision from the Parole Board. The offender still elected to return to the seedy world of drugs, burglary and theft. The offender is not redeemable and is set in his ways. After receiving numerous chances to right himself and leave his trite, ungovernable lifestyle behind him, the offender always, key word, ... always returns to what he knows, debauchery and lawlessness. It's the resolute opinion of the Division of Probation and Parole that the offender is not deserving of probation for the crimes which he has committed. In addition the language found in this report, I also note that Mr. Simmons seems to have a certain propensity for burglary, as he was convicted for burglary in this case and has been convicted for burglary in the past. Mr. Simmons is no stranger to the system having cast his fate between several jurors, including but not limited to the jury that convicted him in this case.
(Sent. trans. of 10/18/02, pp. 4-9)
As to the defendant's complaint concerning the order in which his sentences are to be served, although La. C.Cr.P. art. 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community. State v. Walker, 99-2217 (La.App. 4 Cir. 10/31/00), 775 So.2d 484, affirmed in part and vacated in part XXXX-XXXX (La.10/12/01), 799 So.2d 461. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. 799 So.2d at 461. "Consecutive sentences may be justified when due to past conduct or repeated, key word `past' conduct, key word `repeated' offenses, over an extended period, the defendant poses an unusual risk to the safety of the public." Id.
Considering the findings and recommendations contained in the presentence investigation report, the evidence of the defendant's guilt for the crimes presently under appellate review, and his status as a sixth felony offender (R.S. 15:529.1 A(c)(ii)), the trial court did not abuse its discretion in either the length of, or manner in which, the sentences are to be served. The defendant's complaint that his sentences are excessive has no merit.

CONCLUSION
For the foregoing reasons, we vacate the conviction and sentence on the cocaine possession count and affirm the defendant's convictions and sentences on the other three counts.
CONVICTION AND SENTENCE ON COUNT 18 VACATED; CONVICTION AND SENTENCE ON COUNTS 15, 16, AND 17 AFFIRMED.
NOTES
[1] There is no indication that count 2 was ever tried or nolle prossed.
[2] Because the defendant was acquitted on count 7, attempted simple burglary of Mr. Robert Obialor, the testimony and evidence relative to that count are not included in the Statement of Facts.
[3] Following Mr. Dubberley's testimony, the State played the tape of the 911 call. The Dubberleys identified their voices in the recording.
[4] After trial began and three of the State's witnesses had testified, defense counsel moved for a mistrial on the basis of misjoinder of offenses.
[5] The sentences for false imprisonment with a weapon and sexual battery also may entail sentencing with or without hard labor. However, the defendant does not raise the issue as to those convictions, and even if he did, the joining of those charges was within the discretion of the trial judge, because they occurred within the same scheme, which spawned the aggravated burglary charge. La. C.Cr.P. art. 493.
[6] Louisiana's La.C.Cr. P. art. 493 substantially tracked Federal Rules of Criminal Procedure, Rule 8; therefore, federal interpretive jurisprudence is instructive. For a thorough review of the history of joinder, see State v. McZeal (on rehearing), 352 So.2d 592 (Justice Dennis writing for the majority).
[7] The report is not included in the record.